UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NICK LYNN ENGLISH,<br><br>                            Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                            Defendant. | Case No. 3:16-cv-05010-RSL-KLS<br><br>REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR ATTORNEY FEES UNDER 28 U.S.C. § 2412(d)<br><br>Noted for December 23, 2016 |

This matter is before the Court on plaintiff's motion for attorney fees pursuant to the Equal Access to Justice Act (EAJA). Dkt. 21; 28 U.S.C. § 2412. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the undersigned recommends plaintiff's motion be granted, subject to calculation of the total amount of attorney fees discussed herein.

DISCUSSION

Plaintiff sought judicial review of the denial of his applications for disability insurance and supplemental security income benefits, requesting that the ALJ's decision that she was not disabled be reversed and remanded. The Court agreed that the matter should be reversed and remanded, finding the ALJ had failed to resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT), concerning the handling

ORDER - 1

and fingering requirements of the two jobs the vocational expert at the hearing identified as jobs that plaintiff could do. Dkt. 18.

The EAJA provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Thus, to be eligible for attorney fees under the EAJA: (1) the claimant must be a "prevailing party"; (2) the government's position must not have been "substantially justified"; and (3) no "special circumstances" exist that make an award of attorney fees unjust. *Comm'r, Immigration and Naturalization Serv. v. Jean*, 496 U.S. 154, 158 (1990).

In Social Security disability cases, "[a] plaintiff who obtains a sentence four remand is considered a prevailing party for purposes of attorneys' fees." *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002) (citing *Shalala v. Schaefer*, 509 U.S. 292, 301-02 (1993).[1] Such a plaintiff is considered a prevailing party even when the case is remanded for further administrative proceedings. *Id.* There is no issue as to whether plaintiff is a prevailing party given that as discussed above, this case was remanded for further administrative proceedings. In addition, defendant does not argue there are any special circumstances making an award of attorney's fees unjust.

---

[1] Section 405(g) of Title 42 of the United States Code "authorizes district courts to review administrative decisions in Social Security benefit cases." *Id.*, 296 F.3d at 854. Sentence four and sentence six of Section 405(g) "set forth the exclusive methods by which district courts may remand [a case] to the Commissioner." *Id.* "The fourth sentence of § 405(g) authorizes a court to enter 'a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); *see also Akopyan*, 296 F.3d at 854 (sentence four remand is "essentially a determination that the agency erred in some respect in reaching a decision to deny benefits.").

ORDER - 2

I.      The Government's Position Was Not Substantially Justified

As noted above, to be entitled to attorney fees, the government's position must not be "substantially justified." *Jean*, 496 U.S. at 158. Normally, for the government's position to be "substantially justified," this requires an inquiry into whether the government's conduct was "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person" – and "had a 'reasonable basis both in law and fact.'" *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)); *Penrod v. Apfel*, 54 F.Supp.2d 961, 964 (D. Ariz. 1999) (citing *Pierce*, 487 U.S. at 565); *see also Jean*, 496 U.S. at 158 n.6; *Flores v. Shalala*, 49 F.3d 562, 569-70 (9th Cir. 1995). This "does not mean 'justified to a high degree.'" *Corbin v. Apfel*, 149 F.3d 1051, 1052 (9th Cir. 1998) (quoting *Pierce*, 487 U.S. at 565). On the other hand, "the test" for substantial justification "must be more than mere reasonableness." *Kali v. Bowen*, 854 F.2d 329, 331 (9th Cir. 1988).

The government has the burden of establishing substantial justification. *Gutierrez*, 274 F.3d at 1258. Its position must be "*as a whole*, substantially justified." *Id.* at 1258-59 (emphasis in original). It also "must be 'substantially justified' at 'each stage of the proceedings.'" *Corbin*, 149 F.3d at 1052. "[D]istrict courts should focus on whether the government's position on the particular issue on which the claimant earned remand was substantially justified, not on whether the government's ultimate disability determination was substantially justified." *Hardisty v. Astrue*, 592 F.3d 1072, 1078 (9th Cir. 2010). Accordingly, the government must establish that it was substantially justified both in terms of "the underlying conduct of the ALJ" and "its litigation position defending the ALJ's error." *Gutierrez*, 274 F.3d at 1259. As the Ninth Circuit has explained:

> The plain language of the EAJA states that the "'position of the United States' means, in addition to the position taken by the United States in the civil

ORDER - 3

action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D); *Jean*, 496 U.S. at 159, 110 S.Ct. 2316 (explaining that the "position" relevant to the inquiry "may encompass both the agency's prelitigation conduct and the [agency's] subsequent litigation positions"). Thus we "must focus on two questions: first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court." *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988).

*Id.*

"In evaluating the government's position to determine whether it [i]s substantially justified," therefore, the Court "look[s] to the record of both the underlying government conduct at issue and the totality of circumstances present before and during litigation." *Sampson v. Chater*, 103 F.3d 918, 921 (9th Cir. 1996); *see also Kali*, 854 F.2d at 332; *Thomas v. Peterson*, 841 F.2d 332, 334-35 (9th Cir. 1988). Indeed, the Ninth Circuit has explicitly stated that "[i]t is difficult to imagine any circumstance in which the government's decision to defend its actions in court would be substantially justified, but the underlying decision would not." *Sampson*, 103 F.3d at 922 (quoting *Flores*, 49 F.3d at 570 n.11). While the EAJA creates "a presumption that fees will be awarded unless the government's position was substantially justified," the government's "failure to prevail does not raise a presumption that its position was not substantially justified." *Kali*, 854 F.2d at 332, 334; *Thomas*, 841 F.2d at 335; *see also Flores*, 49 F.3d at 569.

Substantial justification will not be found where the government defends "on appeal . . . 'basic and fundamental' procedural mistakes made by the ALJ." *Lewis v. Barnhart*, 281 F.3d 1081, 1085 (9th Cir. 2002) (quoting *Corbin*, 149 F.3d at 1053). In *Corbin*, the Ninth Circuit found "the failure to make [specific] findings" and "weigh evidence" to be "serious" procedural errors, making it "difficult to justify" the government's position on appeal in that case. 149 F.3d

ORDER - 4

at 1053. In *Shafer v. Astrue*, the Ninth Circuit found the ALJ "committed the same fundamental procedural errors" noted in *Corbin* in failing "to provide clear and convincing reasons for discrediting [the claimant's] subjective complaints," and "to make any findings regarding" the diagnosis of a non-examining medical expert. 518 F.3d 1067, 1072 (9th Cir. 2008). It went on to find that the ALJ had committed additional procedural errors not present in *Corbin*, including rejecting "a treating physician's opinion in favor of a non-treating physician's opinion without providing clear and convincing reasons." *Id.*

Defendant argues the government's position was substantially justified, because the conflict between the vocational expert's testimony and the DOT was only potential and not apparent. *See Johnson v. Astrue*, 2009 WL 801238, at *4 (N.D. Cal. March 25, 2009) ("The ALJ must clarify the discrepancy in the opinion *only where there is an apparent unresolved conflict that arises between the vocational expert's testimony and the DOT.*") (quoting *Mickelson-Wurm v. Comm'r Social Sec. Admin.*, 285 Fed. Appx. 482, 486 (9th Cir.2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir.1995)) (emphasis in the original). The undersigned, however, disagrees that the conflict was not apparent.

It is true that "not all potential conflicts between [a vocational] expert's job suitability recommendation and the" DOT's description of a job "will be apparent or obvious," and that "an ALJ need only follow up on those that are." *Gutierrez v. Colvin*, --- F.3 ---, 2016 WL 6958946, at *2 (9th Cir. 2016). Accordingly, "[f]or a difference between an expert's testimony and the [DOT] to be fairly characterized as a conflict, it must be obvious and apparent." *Id.* "This means that the testimony must be at odds with the [DOT's description] of job requirements that are essential, integral, or expected." *Id.* "[T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about." *Id.* "Likewise,

ORDER - 5

where the job itself is a familiar one – like cashiering – less scrutiny by the ALJ is required." *Id.*

The ALJ, accordingly, "must ask follow up questions of a vocational expert when the expert's testimony is either obviously or apparently contrary to the [DOT], but the obligation doesn't extend to unlikely situations or circumstances." *Id.* at *3. Thus, "where the frequency or necessity of a [job's] task is unlikely and unforeseeable – as it is with cashiers having to reach overhead – there's no [such] obligation." *Id.* (observing that while "'frequent reaching' is required of both cashiers and stock clerks" in the DOT, "anyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to.").

Here, the vocational expert testified that an individual with the same residual functional capacity as plaintiff, including the limitation to only occasional handling and fingering with the dominant right hand, could perform the jobs of food assembler and price marker. AR 81. Unlike the job of cashier, the jobs of food assembler and price marker largely involve tasks that require handling and fingering. For example, the job of food assembler requires:

- prepares meal trays;
- fills individual serving cartons with portions of various foods and condiments by hand or automatic filling machine;
- portions and garnishes cooked foods into individual serving dishes;
- stores dishes of hot food on portable electric warming cabinet or food cart;
- removes pans of portioned cold food items from refrigerator or cafeteria dining unit and places them at stations of tray assembly counter;
- places food, silverware, and dishes in compartmented food tray passing over conveyor belt;
- Stores completed trays in refrigerated storage cabinets.

DOT 319.484-010, 1991 WL 672769. The job of price marker in turn requires:

- marks and attaches price tickets to articles of merchandise;
- marks selling price by hand on boxes or price tickets;
- ties, glues, sews, or staples price ticket to article;

ORDER - 6

- presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article;
- may record number and types of articles and pack them in boxes;
- may print information on tickets, using ticket-printing machine.

DOT 209.587-034, 1991 WL 671802.

While it may be that the DOT "refers to 'occupations,' not to specific jobs," and that "'[o]ccupation' is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed'" – and therefore that "not all potential conflicts between [a vocational] expert's job suitability recommendation and the" DOT "will be apparent or obvious" – handling and fingering appear to be at the heart of both the food assembler and price marker jobs. *Gutierrez*, 2016 WL 6958646, at *2. Thus, it should have been fairly apparent, if not obvious, to the ALJ that any significant limitation in the ability to perform those tasks, such as from the frequent to the merely occasional, would create a conflict requiring further questioning.

Defendant also argues the DOT "does not indicate that either job . . . requires frequent handling or fingering *with both hands*." Dkt. 24, p. 3 (emphasis added). It is true that there may be some instances where the ability to use both upper extremities is not necessary to perform a job. For example, in *Gutierrez* the Ninth Circuit commented that even in the "atypical example" where "a store sells restricted merchandise, such as cigarettes, which are kept overhead," and therefore could require overhead reaching, the plaintiff's restriction "would not have prevented her from reaching overhead with her *left* arm." 2016 WL 6958646, at *3, n. 2 (emphasis in the original). It is not clear in that case, however, which arm was the plaintiff's dominant arm. In any event, unlike here where handling and fingering are the primary tasks, overhead reaching still would not have been an essential or integral part of the job. As such, the government's position on this issue did not have a reasonable basis in either law or fact.

ORDER - 7

## II.       The Reasonableness of Plaintiff's Attorney Fees Request

Before granting attorney fees under the EAJA, the Court must determine whether those fees are "reasonable." *Jean*, 496 U.S. at 161; 28 U.S.C. § 2412(d)(1)(A). The test used to determine what fees are reasonable was set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), which dealt with recovery of attorney fees under 42 U.S.C. § 1988. That test "also is applicable to awards of fees under the EAJA." *Sorenson v. Mink*, 239 F.3d 1140, 1145 n.2 (9th Cir. 2001) (citing *Jean*, 496 U.S. at 161 (once private litigant has met eligibility requirements for EAJA fees, court's task of determining what fee is reasonable is essentially same as that described in *Hensley*)); *see also Haworth v. State of Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995) (case law construing what is "reasonable" fee applies uniformly to all federal fee-shifting statutes) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 2641 (1992)).

In determining "the amount of a reasonable fee," the "most useful starting point" for the Court "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. To that end, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Id.* "Where the documentation of hours is inadequate," the Court "may reduce the award accordingly." *Id.* Further, the Court "should exclude from this initial fee calculation hours that were not 'reasonably expended,'" and "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.

Defendant argues plaintiff's fee request is unreasonable, because plaintiff's counsel billed 7.70 hours for preparing the reply brief, which was identical to the opening brief and appeared to simply be a re-filing of the latter. Dkt. 24 (citing Dkt. 13, 17, 21). In response, plaintiff's counsel states he was not aware of this error until now, and agrees the hours spent drafting that reply did

ORDER - 8

not have an impact on the litigation and thus those hours should be removed from the fee request. Dkt. 25, p. 1. Accordingly, the undersigned finds plaintiff's fee request should be reduced from $2,797.40 (Dkt. 21, 21-1) by $1,476.09 (7.7 hours x $191.70$^2$) to $1,436.33.$^3$

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the government's position was not substantially justified and that plaintiff is entitled to the amount of attorney fees noted above.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRC P 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **December 23, 2016**, as noted in the caption.

DATED this 6th day of December, 2016.

Karen L. Strombom
United States Magistrate Judge

---

[2] Plaintiff's counsel appears to have calculated the amount that should be reduced based on 7.60 hours spent on the reply brief, rather than the 7.7 hours his itemized timesheet indicates, which includes 0.10 hours for docketing that brief. Dkt. 21-1.

[3] This includes an additional 0.6 hours spent by plaintiff's counsel addressing defendant's arguments regarding the issue of whether the government's position was substantially justified, for a further $115.02 in attorney fees. Dkt. 25, 25-1; *Jean*, 496 U.S. at 161-62 (stating that "absent unreasonably dilatory conduct by the prevailing party in 'any portion' of the litigation, which would justify denying fees for that portion, a fee award presumptively encompasses all aspects of the civil action," and that "the EAJA – like other fee-shifting statutes – favors treating a case as an inclusive whole") (citing *Sullivan v. Hudson*, 490 U.S. 877, 888 (1989) (stating where administrative proceedings are "necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded")).

ORDER - 9